**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In re:

      Division 2 Trucking Company,

           Debtor.

Bankr. No. 25-32182

Chapter 11

---

**DEBTOR'S MODIFIED PLAN OF REORGANIZATION**

---

Division 2 Trucking Company (the "Debtor") proposes the following as its Modified Plan of Reorganization ("Plan") pursuant to section 1121 of title 11 of the United States Code (11 U.S.C. §101 *et seq.* (the "Bankruptcy Code").[1]

### I.      DEFINITIONS AND RULES OF INTERPRETATION

**1.1.    Defined Terms.**  In addition to capitalized terms defined elsewhere in the Plan, the following definitions will be used for purposes of the Plan:

"Administrative Claim" means any Claim for the payment of any administrative expense arising under Section 503(b) of the Bankruptcy Code.

"Allowed Claim" means a Claim, proof of which is filed within the time fixed by the Bankruptcy Court, and to which no objection to allowance has been filed within any applicable period fixed by the Bankruptcy Court, or as to which a Final Order allowing such Claim has been entered, or a Claim that is scheduled by the Debtor in a liquidated amount, and not disputed or contingent, unless the Debtor or any other party in interest timely files an objection to such Claim, or the Debtor files amendments to its schedules by which such Claim is scheduled as contingent, unliquidated, or disputed.

"Bankruptcy Case" means the above-captioned chapter 11 bankruptcy case.

"Bankruptcy Court" means the United States Bankruptcy Court for the District of Minnesota.

"Bankruptcy Code" means the United States Bankruptcy Code (11 U.S.C. § 101 *et seq.*).

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure.

"Claim" means any right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed,

---

[1] Unless otherwise indicated, all statutory references are to the Bankruptcy Code.

legal, equitable, secured or unsecured, as defined by section 101(5) of the Bankruptcy Code.

"Claims Bar Date" means November 24, 2025.

"Confirmation Date" means the date on which the Bankruptcy Court enters an order confirming the Plan.

"Confirmation Order" means the order confirming the Plan.

"Disclosure Statement" means the Debtor's Disclosure Statement dated May 1, 2026.

"Disputed Claim" means any Claim that has been scheduled as disputed, unliquidated, or contingent, any Claim that does not appear on the Debtor's schedules and is not the subject of a timely filed proof of claim, any Claim that is or may become subject to a right of setoff on the basis of any claim that has been asserted by the Debtor as of the Confirmation Date, or any Claim with respect to which an objection has been filed.

"Effective Date" means the first business day of the first calendar month after the Confirmation Order becomes a Final Order or such earlier date as the Debtor may designate in its sole discretion.

"Final Order" means an order or judgment as to which the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing is pending.

"Petition Date" means July 16, 2025.

"Plan Term" means the period beginning on the Confirmation Date and ending on the date on which the Debtor has fully performed all of its obligations under the Plan.

"Pre-Petition Priority Government Claims" means any Claim that is entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

 "Pro Rata" means, with respect to distributions under the Plan, the amount to be distributed on account of a particular Allowed Claim determined by multiplying the amount to be distributed by a fraction, the numerator of which is the particular Allowed Claim and the denominator of which is the aggregate of Allowed Claims entitled to share in the distribution.

"Third Party Claims" means all claims and causes of action belonging to the Debtor as of the Confirmation Date, whether arising under contract, tort, or other federal or state law, including avoidance actions under chapter 5 of the Bankruptcy Code.

Unless the context requires otherwise, terms defined in the Bankruptcy Code shall have the meanings assigned therein.

**1.2.    Computation of Time.**  For purposes of computing the time by which any notice shall be given or any other act shall be completed, except as may otherwise be provided in the Plan, the provisions of Rule 9006(a) of the Bankruptcy Rules shall apply.

## II.    TREATMENT OF CLAIMS AND INTERESTS

### 2.1.    Classified Claims and Interests

#### A.    Class 1 – BMO Bank N.A.

Class 1 consists of the secured claim of BMO Bank ("BMO"). The Debtor is indebted to BMO pursuant to that certain Loan and Security Agreement dated May 23, 2022 in the original principal amount of $459,538.42 (as amended, the "BMO Loan Agreement"). The funds advanced pursuant to the BMO Loan Agreement were used to purchase two (2) 2020 model VHD Volvo dump trucks (VIN Nos. 4V5KC9EH7LN265962 and 4V5KC9EH3LN265960) and related equipment (the "BMO Collateral"). As of the Petition Date, the aggregate outstanding balance under the BMO Loan Agreement was $208,185.10.

Pursuant to the BMO Loan Agreement, BMO was granted a first priority security interest in the BMO Collateral, and BMO perfected such interest by delivery of the certificates of title to the Minnesota Department of Public Safety, and having BMO's interest noted on replacement certificates of title.

Class 1 is impaired.

### Treatment of Class 1 Claim

Unless a party in interest objects to the Class 1 Claim and the Court determines otherwise, the Class 1 Claim shall be allowed in the amount of $208,185.10, *plus* any unpaid fees and post-petition interest calculated at the non-default rate provided under the BMO Loan Agreement to the extent allowable under section 506 of the Bankruptcy Code, or such lesser amount as the Debtor and BMO shall agree remains outstanding as of the Effective Date. For purposes of the Plan, the value of the BMO Collateral shall be $280,000.00.

Interest shall accrue on the Class 1 Claim at the rate of nine and three-quarters percent (9.75%) per annum. The Debtor shall make payments on the Class 2 Claim over a 36-month schedule as follows: On the first business day after the Effective Date and on the first business day of each of the thirty-four (34) succeeding months the Debtor shall make a payment of principal and interest calculated pursuant to a seven-year amortization schedule. On the first business day of the following month, a balloon payment of all outstanding principal, interest, and fees (if any) shall be due and payable.

The Debtor's obligations on account of the Class 1 Claim shall be secured by a security interest in the BMO Collateral, with such security interest having the same priority, dignity, and effect as prevailed immediately prior to the Petition Date.

Except as otherwise provided herein, all of the Debtor's obligations on account of the Class 1 Claim shall be governed by the terms of the BMO Loan Agreement, and all related instruments and agreements, the terms of which are incorporated herein by this reference.

### B.        Class 2 – Volvo Financial Services, a division of VFS US LLC

Class 2 consists of the secured claim of Volvo Financial Services, a division of VFS US LLC ("Volvo"). The Debtor is indebted to Volvo pursuant to that certain Credit Sales Contract dated November 18, 2022 (as amended, the "Volvo Loan Agreement"). Pursuant to the Volvo Loan Agreement, Volvo financed the Debtor's purchase of two (2) 2019 model Western Star dump trucks (VIN Nos. 5KKWAVFE9KPKG1641 and 5KKWAVFE0KPKG1642) and one (1) 2020 Mack dump truck (VIN No. 1M2GR4GC5LM017848) (the "Volvo Collateral"). As of the Petition Date, the aggregate outstanding balance under the Volvo Loan Agreement was $400,250.39.

Pursuant to the Volvo Loan Agreement, the Debtor granted Volvo a first priority security interest in the Volvo Collateral, and Volvo perfected such interest by delivery of the certificates of title to the Minnesota Department of Public Safety, and having Volvo's interest noted on such certificates of title.

Class 1 is impaired.

### Treatment of Class 2 Claim

Unless a party in interest objects to the Class 2 Claim and the Court determines otherwise, the Class 2 Claim shall be allowed in the amount of $400,250.39, *plus* any unpaid fees and post-petition interest calculated at the non-default rate provided under the Volvo Loan Agreement to the extent allowable under section 506 of the Bankruptcy Code, or such lesser amount as the Debtor and Volvo shall agree remains outstanding as of the Effective Date. For purposes of the Plan, the Debtor and Volvo agree that the value of the Volvo Collateral shall be $410,000.00.

Interest shall accrue on the Class 2 Claim at the rate of nine and three-quarters percent (9.75%) per annum. The Debtor shall make payments on the Class 2 Claim over a 36-month schedule as follows: On the first business day after the Effective Date and on the first business day of each of the thirty-four (34) succeeding months the Debtor shall make a payment of principal and interest calculated pursuant to a ten-year amortization schedule. On the first business day of the following month, a balloon payment of all outstanding principal, interest, and fees (if any) shall be due and payable.

The Debtor's obligations on account of the Class 2 Claim shall be secured by a security interest in the Volvo Collateral, with such security interest having the same priority, dignity, and effect as prevailed immediately prior to the Petition Date. The Debtor shall have 5 days from receipt of written notice to cure any payment default with respect to the Class Two Claim.

Except as otherwise provided herein, all of the Debtor's obligations on account of the Class 2 Claim shall be governed by the terms of the Volvo Loan Agreement, and all related instruments and agreements, the terms of which are incorporated herein by this reference.

## C.    Class 3 – Blade Funding Corp.

Class 3 consists of the secured claim of Blade Funding Corp. ("Blade"). The Debtor and Blade are parties to a Sale of Future Receipts Agreement dated August 21, 2024 (the "Blade Agreement"), pursuant to which the Debtor purportedly sold to Blade "Future Receipts" in the amount of $710,500.00 for a "Purchase Price" of $490,000.00. $20,000.00 of the purported Purchase Price was retained as an "Origination Fee" and another $459,693.31 was applied to the Debtor's obligations under a May 8, 2024 Standard Merchant Cash Advance Agreement, with the Debtor receiving just $10,306.69.

The May 8, 2024 agreement with Blade was also effectively a refinancing of a Standard Merchant Cash Advance Agreement dated March 14, 2024, under which the Debtor was paid $142,500.00 for "Receivables" in the amount of $209,850.00. Under the May 8 agreement, the amount of purchased Receivables was increased to $335,760.00, and the $240,000.00 Purchase Price was distributed as follows: (a) $19,200.00 was retained by Blade as an Origination Fee; (b) $160,157.00 was applied, in approximately equal parts, to the Debtor's obligations under the March 14 agreement, and the remainder was paid to third parties for the Debtor's benefit; and (c) $60,643.00 was paid to the Debtor.

In total, between March 14, and August 21, 2024, the Debtor received approximately $288,000.00 from Blade, either in direct payments or through payment of debts to third parties. Between March 22, 2024 and May 29, 2025, Blade received over $556,000.00 from the Debtor. After a little over one year, Blade had therefore realized a nearly fifty percent (50%) return on its purported purchases of the Debtor's "Future Receipts" and other receivables.

On August 20, 2025, Blade filed a proof of claim by which it asserted a claim in the amount of $458,708.00, which it alleged is secured by a lien on assets described in a UCC financing statement filed with the office of the Minnesota Secretary of State on March 26, 2024 (Doc. No. 1465825100027) (the "Blade Financing Statement").

The Blade Financing Statement describes Blade's collateral, in part, as including "All Assets now owned or hereafter acquired and wherever located." Notwithstanding the broad language in the financing statement, Blade was not actually granted a security interest in all of the Debtor's assets. At most, Blade was granted a security interest in the Debtor's accounts, payment intangibles, and rights to payment in general (as defined in the Blade Agreement, "Future Receipts"). Based on the date of filing, Blade's interest in Future Receipts, to the extent enforceable, would be senior to all other interests and liens in such assets.

While the Blade Agreement nominally provides for the sale of "all payments received by [the Debtor], or its right to receive such payments, in the ordinary course of [the Debtor's] business," the Debtor maintains that the transaction with Blade is functionally indistinguishable from a loan, and, accordingly, will be treated as a loan for purposes of the Plan.

Class 3 is impaired.

5

### Treatment of Class 3 Claim

Pursuant to section 506(a) of the Bankruptcy Code, the Class 3 Claim will be treated as a secured claim in the amount of $270,000.00, which is the estimated fair market value of the estate's interest in the personal property described in the Blade Financing Statement as of the Petition Date.

Unless a party in interest objects to the Class 1 Claim and the Court determines otherwise, the Class 3 Claim shall be allowed as a secured claim in the amount of $270,000.00, and the $188,708.00 balance of Blade's claim shall be a general unsecured claim, subject to treatment as part of Class 4.

Interest shall accrue on the Class 3 Claim at the rate of eight percent (8%) per annum. On the Effective Date and the first business day of each of the fifty-eight (58) succeeding months, the Debtor shall make a payment of principal and interest calculated according to a fifteen-year amortization schedule. All outstanding principal and interest shall be due and payable on the first business day of the sixtieth month after the Effective Date.

The Debtor's obligations on account of the Class 3 Claim shall be secured by a first priority security interest in the Class 3 Collateral. In the event the Debtor defaults in any payment obligation to Blade under the Plan, and such default is not cured within fourteen (14) days after the Debtor receives written notice of default, Blade shall be entitled to exercise all rights afforded a secured creditor and the Debtor shall have all rights of a debtor under Article 9 of the Uniform Commercial Code as enacted in Minnesota.

**The Debtor's proposed treatment of the Class 3 Claim is intended as a compromise of disputed claims, and confirmation of the Plan shall constitute approval of such settlement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure. In the event that Blade objects to the proposed treatment, or to confirmation of the Plan, the Debtor reserves all rights and claims arising out of or related to the Blade Agreement, including, but not limited to, Claims that the obligations under the Blade Agreement are avoidable under sections 544 and 548 of the Bankruptcy Code and the Minnesota Uniform Voidable Transactions Act.**

### D.      Class 4 – General Unsecured Claims

Class 4 consists of the non-priority unsecured Claims against Debtor that are not classified elsewhere in the Plan, and includes the claims of all creditors who filed proofs of claim asserting secured status and all creditors with claims that were scheduled as disputed in the Debtor's schedule D except to the extent such claims are included in Class 1, Class 2, or Class 3. Without limiting the generality of the foregoing, Class 4 includes all of the claims of any party asserting an interest in the Debtor's accounts receivable that is junior to Blade's interest, including the claims filed by: (i) Atlas Acquisitions LLC on behalf of Avion Funding LLC (Claim No. 7); (ii) Headway Capital LLC (Claim No. 10); and (iii) Rowan Advance, LLC (Claim No. 14).

As of the date the Plan was filed, a total of approximately $3 million in Claims that would be included in Class 4 had either been filed or listed in the Debtor's schedules as undisputed. The Debtor estimates that allowable Class 4 Claims will total approximately $2.1 million. Except for

the deadlines imposed under Article III, nothing in this Plan shall affect the right of the Debtor or any other party to object to any Claim.

Class 4 is impaired.

### Treatment of Class 4 Claims

Subject to any other limitations, the Debtor will make distributions in the amounts and on or before the dates indicated below on a Pro Rata basis to the holders of allowed Class 4 Claims:

| Payment Date | Payment Amount |
|---|---|
| 12 mos. after Effective Date | $15,000.00 |
| 18 mos. after Effective Date | $25,000.00 |
| 24 mos. after Effective Date | $25,000.00 |
| 30 mos. after Effective Date | $30,000.00 |
| 36 mos. after Effective Date | $30,000.00 |
| 42 mos. after Effective Date | $45,000.00 |
| 48 mos. after Effective Date | $45,000.00 |
| 54 mos. after Effective Date | $45,000.00 |
| 60 mos. after Effective Date | $45,000.00 |

Notwithstanding the foregoing, in no event shall the aggregate of payments made on account of any Class 4 Claim exceed the allowed amount of such claim, and the Debtor's obligations to the holder of any Class 4 Claim shall be fully satisfied upon the earlier of: (a) Payment of all amounts according to the schedule set forth above; and (b) Payment in full of the allowed amount of such claim.

### E.    Class 5 – Shareholder Claim

Class 5 consists of the unsecured claim held by Michael Hudall, the Debtor's president and sole shareholder, in the scheduled amount of $72,771.11.

Class 5 is impaired.

### Treatment of Class 5 Claims

Upon the Effective Date, the Class 5 Claim shall be converted into common stock representing one hundred percent (100%) of the equity interests in the reorganized Debtor.

### F.    Class 6 – Equity Interests

Class 6 consists of all interests arising out of or related to the equity interests in Debtor, including all financial and all governance rights associated with any and all outstanding stock issued at any time.

Class 6 is impaired.

## Treatment of Class 6 Interests

As of the Effective Date, all of the Debtor's outstanding stock shall be cancelled.

**2.2.  Unclassified Claims – Description of Holders and Treatment of Claims**

**2.2.1. Pre-Petition Priority Government Claims**. Pre-Petition Priority Government Claims include those filed by the IRS, in the amount of $731,750.11 (Proof of Claim No. 5, as amended), and the Minnesota Department of Revenue, in the amounts of $9,126.83 (Proof of Claim No. 4, as amended) and $28,589.68 (Proof of Claim No. 15), and the Minnesota Department of Employment & Economic Development (Proof of Claim No. 18, as amended), in the amount of $73,119.00.

The Pre-Petition Priority Government Claim filed by the IRS will be paid in full on the following terms:

(1)    Interest shall accrue at the rate of seven percent (7%) per annum;

(2)    On the Effective Date and on the first business day of each of the thirty (30) succeeding months, payments of principal and interest shall be made according to a fifteen-year amortization schedule; and

(3)    After the first thirty-one (31) installments, the balance shall be re-amortized, and the Debtor will begin paying monthly installments according to a thirty (30) month amortization schedule; and

(4)    after sixteen (16) payments according to the thirty (30) month amortization schedule, the Debtor shall pay the entire outstanding balance, including principal and accrued, unpaid interest, by no later than July 16, 2030.

The Pre-Petition Priority Government Claims filed by the Minnesota Department of Revenue and the Minnesota Department of Employment & Economic Development will be paid in full on the following terms:

(1)    Interest shall accrue at the rate of seven percent (7%) per annum;

(2)    On the Effective Date and on the first business day of each of the thirty (30) succeeding months, payments of principal and interest shall be made according to a ten-year amortization schedule; and

(3)    After the first thirty-one (31) installments, the balance shall be paid in monthly installments according to a sixteen (16) month amortization schedule; *provided, however,* that the Debtor shall pay the entire outstanding balance, including principal and accrued, unpaid interest, by no later than July 16, 2030.

8

**2.2.2. Administrative Claims**.

### A.    Professional Fees

Professional fees that constitute Administrative Claims are the allowed fees and costs of the professionals employed in the course of the Bankruptcy Case. The Debtor currently estimates that the total of professional fees that will have to be paid after exhaustion of all amounts held on retainer will be approximately $60,000.00.

Provided the professionals receive Bankruptcy Court approval of their fees and expenses, claims for professional fees shall be paid in full in cash within ten days after entry of an order approving such fees and expenses, or on such date as the Court may fix, or upon such other terms as may be agreed upon by the professionals and the Debtor.

### B.    U.S. Trustee Fees and Court Costs

U.S. Trustee fees and court costs that constitute Administrative Claims are those obligations imposed by operation of 28 U.S.C. §1930 (all such fees and costs will be referred to as "U.S. Trustee Fees").

The Debtor will pay all U.S. Trustee Fees as and when due, until the Bankruptcy Case is closed. In addition, the Debtor will continue to comply with all reporting requirements and operating guidelines established by the U.S. Trustee until the Bankruptcy Case is closed.

### C.    Other Administrative Expense Claims

Southgate Lease Services, Inc. ("Southgate"), the lessor under the equipment leases described below, has an allowable administrative expense claim for contractual payments that accrued in August 2025. According to documents provided by Southgate, it appears that Southgate may allege that it has an allowable administrative expense in the amount of $28,606.85.

There may be other Administrative Claims, such as the following:  (1) filed proofs of claim for administrative expenses; (2) post-petition taxes; and (3) unpaid post-petition claims incurred in the ordinary course of business.

To the extent that there are any other allowed Administrative Claims, such claims will be paid in full on the Effective Date, or as otherwise agreed to by the Debtor and the claimant; *provided, however*, that claims incurred in the ordinary course of business after the Filing Date will be paid as and when due in the ordinary course of business.

### 2.3.    Executory Contracts and Unexpired Leases

**2.3.1 Zinran Lease**. The Debtor will assume its unexpired lease of real property with lessor Zinran Properties, LLC ("Zinran"), with such assumption being effective as of the Confirmation Date. On the Effective Date, the Debtor will pay Zinran the sum of $4,968.69, which payment shall constitute a cure of all defaults under the lease.

**2.3.2 Insurance Contracts**. To the extent any of its insurance policies may be deemed to be executory contracts ("Insurance Contracts"), such contracts will be assumed, with such assumption being effective as of the Confirmation Date.

**2.3.3 Southgate Leases**. The Debtor and Southgate Lease Services, Inc. ("Southgate") are parties to that certain Master Lease Agreement dated March 1, 2018 (the "Southgate Master Lease"), which sets forth the general terms applicable to a number of separate truck leases (the "Southgate Leases"). The terms specific to each Southgate Lease are set forth in documents denominated as Schedule A in the Southgate Master Lease. The Southgate Leases are for terms between thirty-six (36) and sixty (60) months.

As of the Petition Date, the Debtor was in possession of eleven (11) vehicles leased by Southgate. The vehicles, and a summary of the terms of each of the relevant Southgate Leases are as follows:

| Lease Date | Year | Make | Model | Term | Monthly Payment as of Petition Date |
|---|---|---|---|---|---|
| 3/29/2018 | 2012 | GMC | Sierra | 60 mos. | $16.76 |
| 7/29/2021 | 2021 | Dodge | Ram 1500 | 60 mos. | $1,052.13 |
| 5/31/2022 | 2012 | Ford | F350 | 36 mos. | $16.76 |
| 5/31/2022 | 2017 | Freightliner | 122SD | 60 mos. | $3,402.69 |
| 3/28/2022 | 2022 | Freightliner | 122SD | 60 mos. | $3,629.48 |
| 3/28/2022 | 2022 | Freightliner | 122SD | 60 mos. | $3,629.48 |
| 10/12/2021 | 2022 | Kenworth | W900 | 60 mos. | $2,089.07 |
| 4/19/2022 | 2017 | Mack | GU813 | 48 mos. | $2,851.04 |
| 4/1/2021 | 2005 | Peterbilt | 378 | 60 mos. | $1,967.68 |
| 5/28/2021 | 2020 | Western Star | 4700 | 60 mos. | $2,758.88 |
| 7/23/2021 | 2021 | Western Star | 49X | 60 mos. | $3,325.41 |

On or about March 1, 2026, the following dump trucks were surrendered to Southgate: 2022 Kenworth, 2017 Mack, 2005 Peterbilt, 2020 Western Star, and 2021 Western Star. The Southgate Leases for the previously surrendered Southgate trucks will be rejected, with such rejection being effective as of March 1, 2026. All remaining Southgate Leases will be rejected as of the Effective Date of the Plan.

**2.3.4 Other Contracts and Leases.** Other than the Zinran Lease, the Insurance Contracts, and the Southgate Leases, the Debtor does not believe that it is a party to any executory contracts or unexpired leases.  To the extent the Debtor is a party to any other unexpired lease(s) or executory contract(s), the same shall be **REJECTED**, with such rejection being effective as of the Confirmation Date.

Claims based on the rejection of an executory contract or unexpired lease, if any, will be treated as unsecured claims.  Unless otherwise ordered by the Court, the deadline for filing a proof of claim for damages arising from rejection of a contract or lease will be fixed at 30 days from the date on which an order confirming the Plan is entered.  **THE INFORMATION PROVIDED**

**HEREIN CONSTITUTES NOTICE OF THE DEADLINE FOR ASSERTING CLAIMS FOR DAMAGES FROM REJECTION OF ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE.**

## III.   PROOFS OF CLAIMS AND OBJECTIONS TO CLAIMS

### 3.1.   Administrative Expense Claims

Unless otherwise ordered by the Bankruptcy Court, administrative expense claims must be filed by the date that is thirty days after the Confirmation Date. **EXCEPT AS OTHERWISE ORDERED BY THE BANKRUPTCY COURT, THIS INFORMATION CONSTITUTES NOTICE OF THE DEADLINE FOR ASSERTING ADMINISTRATIVE EXPENSE CLAIMS.**

### 3.2.   Other Claims

Except as otherwise ordered by the Bankruptcy Court, claims arising out of the rejection of executory contracts and unexpired leases must be asserted by the filing of a proof of claim by the date that is thirty days after the Confirmation Date. **EXCEPT AS OTHERWISE ORDERED BY THE BANKRUPTCY COURT, THIS INFORMATION CONSTITUTES NOTICE OF THE DEADLINE FOR ASSERTING CLAIMS FOR DAMAGES FROM REJECTION OF ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE.**

Pursuant to section 502(a), the Debtor and all parties in interest are entitled to file objections to claims, including claims that are scheduled as undisputed, non-contingent, and in a liquidated amount. The Debtor does not currently anticipate filing any claim objections. **EXCEPT AS OTHERWISE ORDERED BY THE BANKRUPTCY COURT, OR AS OTHERWISE PROVIDED IN THE PLAN, THE DEADLINE FOR FILING OBJECTIONS TO CLAIMS IS THE DATE THAT IS THIRTY DAYS AFTER THE CONFIRMATION DATE.**

## IV.   CONFIRMATION AND POST-CONFIRMATION OPERATIONS

### 4.1.   Conditions to Confirmation

Confirmation of the Plan shall not occur unless and until the Bankruptcy Court has entered the Confirmation Order in a form acceptable to the Debtor.

### 4.2.   Conditions to Effective Date

The Effective Date of the Plan shall not occur unless the Confirmation Order becomes a Final Order. Notwithstanding the foregoing, the Debtor, in its sole discretion, may waive the foregoing conditions.

### 4.3.   Plan Performance

#### A.   Source of Plan Payments

Payments under the Plan will be funded by the Debtor's post-confirmation revenues.

**B.** **Plan Distributions by Debtor**

Distributions under the Plan will be made by the Debtor on the dates provided for in the Plan, or on such earlier dates as the Debtor, in its sole discretion, may choose. The Debtor may prepay any obligation under the Plan without penalty. Any payment or distribution required to be made under the Plan on a day other than a business day will be made on the next succeeding business day, or as soon thereafter as practicable.

The Debtor will not be required to make any payment or distribution on account of a Disputed Claim, until: (a) the Claim becomes an Allowed Claim, whether by agreement of the parties or by Final Order; or (b) in the case of a Claim that is subject to an unliquidated right of setoff, such right of setoff has been liquidated. To the extent that the determination of any Claim is the subject of litigation in any court as of the Effective Date, such litigation shall continue until the Claim has been determined by final order(s).

From and after the Effective Date, and until such time as all Disputed Claims have been determined, the Debtor shall withhold such amount from any distribution as is necessary to ensure that each holder of a Disputed Claim shall receive payment of its Pro Rata amount of all prior distributions in accordance with the provisions of the Plan in the event such Claim is Allowed in the maximum amount claimed.

Promptly after all Disputed Claims have been determined, the Debtor shall distribute such amount to the holders of the Disputed Claims such amount as the holders of such Claims would have been entitled to if their Allowed Claims had been determined on the Effective Date. Any additional amounts that have been withheld shall be distributed among all holders of Allowed Class 4 Claims on a Pro Rata basis.

In the event that any property to be distributed under the Plan remains unclaimed or otherwise not deliverable as of the later of: (a) one year after the Confirmation Date; or (b) ninety (90) days after any distribution called for under the terms of the Plan, such property will revert to and vest in the Debtor.  Unclaimed property includes, but is not limited to, checks issued pursuant to the Plan and not negotiated within ninety (90) days of the date such check was issued.

The Debtor will withhold from any property distributed under this Plan any amounts required to be withheld for federal, state, or local taxes. The issuance, transfer or exchange of any of the securities issued under, or the transfer of any other property pursuant to this Plan, or the making or delivery of an instrument of transfer under this Plan, is exempt from any stamp, transfer, or other similar tax to the full extent provided under section 1146 of the Bankruptcy Code.

Except as expressly stated in the Plan or otherwise ordered by the Bankruptcy Court, no interest, penalty, or late charge arising after the Petition Date will be allowed on any Claim, regardless of whether an objection to the Claim is filed or sustained. No attorneys' fees will be paid with respect to any Claim except as specified in the Plan or as ordered by the Bankruptcy Court.

Distributions under the Plan will be made by check and will be delivered by first class United Sates mail, postage prepaid to: (a) the latest mailing address set forth in the schedules if no proof of claim was filed with respect to such Claim; or (b) to the address appearing on a proof of claim

as the address to which notices should be sent if a proof of claim was filed. Distributions will be deemed made as of the time they are deposited in the United States mail.

Any notices related to the Plan should be addressed as follows:

Division 2 Trucking Company
Attn. Michael Hudalla
12491 Zinran Ave.
Savage, MN 55378-1082

### C.      Continued Existence

From and after the Confirmation Date, the Debtor will continue to exist in accordance with laws applicable to Minnesota corporations. The Debtor's articles, bylaws, and other organizational documents will remain in effect according to their terms as of the Confirmation Date, except that such articles, bylaws, and other organizational documents will be deemed amended to bar the issuance of non-voting stock.

As of the Confirmation Date, all actions contemplated by the Plan will be deemed authorized and approved in all respects, and all matters provided for in the Plan involving the corporate structure of the Debtor will be deemed to have occurred and will be in effect, without any requirement of further action by any equity holder, director, or officer. As of the Confirmation Date, the president of the Debtor shall be authorized to issue, execute, and deliver the agreements, documents, and other instruments contemplated by the Plan.

### D.      Setoff

Subject to the limitations provided in section 553 of the Bankruptcy Code, the Debtor may, but will not be required to, setoff against any claim and the payments or other distributions to be made on account of such Claim, claims of any nature whatsoever the Debtor may have against the holder of such Claim. Neither the failure to setoff, nor the allowance of any Claim will constitute a waiver or release by the Debtor of any Claim or right.

### E.      Management and Compensation of Management

After confirmation, Michael Hudalla will continue to serve as the Debtor's president. Mr. Hudalla will be paid a salary of $115,000.00, which is the same salary as he earned prior to the Petition Date, and will be entitled to indemnification to the extent provided under the Debtor's governance documents and as otherwise provided under Minnesota law. During the Plan Term, Mr. Hudalla's salary may be increased from time to time, provided that such increases do not deviate materially from increases that would result from tying raises directly to changes in the consumer price index.

Mr. Hudalla will also serve as the Debtor's sole director from and after the Confirmation Date. Mr. Hudalla will not receive any compensation for his services as director, but he will be entitled to reimbursement for expenses incurred in carrying out his duties as director, and will be entitled to indemnification to the extent provided under the Debtor's governance documents and as otherwise provided under Minnesota law.

### F.        Equity Structure of Reorganized Debtor

As of the Effective Date, all of the Debtor's outstanding stock shall be cancelled, and the Debtor shall issue new stock to Michael Hudalla in full and final satisfaction of the Class 5 Claim.

### G.        Implementation of Plan

The Debtor's obligations under the Plan are contingent upon the Confirmation Order becoming a Final Order; *provided, however*, that if the Confirmation Order is appealed but is not stayed, the Debtor may, in its sole discretion, declare the Plan to be effective and undertake and perform its obligations under the Plan and enforce its rights under the Plan notwithstanding the pendency of an appeal.

### H.        Modification of Plan

The Plan may be modified in the manner provided for under section 1127 of the Bankruptcy Code. The Debtor will give notice of any proposed modification to the United States Trustee and to any other parties designated by the Court or entitled to notice under applicable rules.  The Debtor reserves the right to make such modifications at any hearing on confirmation as may be necessary to facilitate confirmation of the Plan.

### I.        Debtor's Rights and Powers

Except to the extent the Plan provides otherwise, from and after the Confirmation Date, the Debtor will retain authority to:

(1)        Object to the allowance of Claims;

(2)        Seek subordination of Claims;

(3)        Seek modification of the Plan;

(4)        Assert, prosecute, and settle claims against third parties, all of which are preserved, except to the extent specifically released pursuant to this Plan; and

(5)        Pursue any claims and enforce any rights arising under the Bankruptcy Code in favor of a trustee or debtor-in-possession.

### J.        Court Approval

Except to the extent the Plan provides otherwise, from and after the Confirmation Date, the Debtor may, but will not be required to, seek Bankruptcy Court approval of:

(1)        Settlements regarding objections to Claims;

(2)        Settlements regarding Third Party Claims; and

(3)    Settlements regarding payment of fees and expenses incurred by professionals prior to the Confirmation Date and approved by the Bankruptcy Court.

**K.    Jurisdiction**

To the full extent permitted under applicable law, until the Plan has been fully consummated, the Bankruptcy Court will retain jurisdiction over all proceedings related to the following:

(1)    Classification of Claims;

(2)    Determination of the allowed amount of any Claims arising before or during the pendency of the Bankruptcy Case;

(3)    Subordination of Claims;

(4)    Determination of any counterclaims against any creditor, including any claim for turnover of property of the Debtor and any claim for offset of the value of such property against the claim of the creditor;

(5)    Determination of the Claims for damages from the rejection of executory contracts or unexpired leases;

(6)    Determination of all issues and disputes regarding title to the assets of the estate and the Debtor;

(7)    Determination of all causes of actions between Debtor and any other party;

(8)    Correction of any defect, the curing of any omission or the reconciliation of any inconsistency of the Plan or the Confirmation Order as may be necessary to carry out the purpose and intent of the Plan;

(9)    Interpretation and enforcement of the terms of the Plan;

(10)   Shortening or extending, for cause, any time fixed for doing any act or thing under the Plan;

(11)   Entry of any order, including any injunction, necessary to enforce the title, rights, and powers of the Debtor;

(12)   Entry of an order closing the Bankruptcy Case; and

(13)   Approval of any settlement related to any of the foregoing.

15

**4.4.      Effects of Plan Confirmation**

**A.      Binding Effect**

As of the Confirmation Date, the Plan will be binding upon and inure to the benefit of Debtor, all holders of claims against and interests in the Debtor, and all of their respective successors and assigns.

**B.      Discharge and Injunction**

AS OF THE CONFIRMATION DATE, EXCEPT AS OTHERWISE PROVIDED IN THE PLAN:

(A)     TO THE FULL EXTENT PROVIDED FOR IN SECTION 1141 OF THE BANKRUPTCY CODE, THE PLAN CONSTITUTES A COMPLETE DISCHARGE, WAIVER, RELEASE, AND SATISFACTION OF ALL: (I) CLAIMS AGAINST AND INTERESTS IN THE DEBTOR; (II) LIENS, ENCUMBRANCES, AND SECURITY INTERESTS AGAINST PROPERTY OF THE DEBTOR, PROPERTY DEALT WITH BY THE PLAN, AND PROPERTY OF THE ESTATE.

(B)     THE ORDER CONFIRMING THE PLAN SHALL BE DEEMED TO BE A GENERAL ADJUDICATION AND RESOLUTION WITH PREJUDICE OF ALL PENDING LEGAL PROCEEDINGS AGAINST THE DEBTOR, PROPERTY OF THE DEBTOR, OR PROPERTY OF THE ESTATE.

(C)     THE DISCHARGE OPERATES AS AN INJUNCTION TO THE EXTENT PROVIDED IN SECTION 524 OF THE BANKRUPTCY CODE. CREDITORS AND EQUITY HOLDERS WILL BE DEEMED TO HAVE RELEASED THE DEBTOR FROM ANY CLAIM WITH RESPECT TO WHICH A DISTRIBUTION IS MADE. THIS RELEASE WILL BE ENFORCEABLE AS A MATTER OF CONTRACT AGAINST ANY CREDITOR OR EQUITY HOLDER ENTITLED TO ANY DISTRIBUTION PURSUANT TO THIS PLAN.

**C.      Exculpation and Limitation of Liability**

Neither the Debtor, nor any of its officers, directors, shareholders, employees, advisors, attorneys, or agents shall be liable for any claims based on conduct related to administration of the Bankruptcy Case or the confirmation of the Plan, except to the extent arising out of fraud, willful misconduct, or gross negligence.

**D.      Re-Vesting of Assets**

Subject to the terms of the Plan, as of the Confirmation Date:

(1)     The Debtor will be restored to full ownership of all property of the estate, free and clear of all claims, liens, encumbrances, charges, and other interests; and

(2)      The Debtor may freely operate its business and may freely use, acquire, and dispose of property, and will not be subject to restrictions imposed by operation of the Bankruptcy Code or otherwise arising out of the Debtor's status as a debtor-in-possession.

*[Signature page to follow]*

Dated: June 22, 2026 DIVISION 2 TRUCKING COMPANY

*/s/ Michael Hudalla*
Michael Hudalla
Its President

COZEN O' CONNOR

*/s/ Joel D. Nesset*
Joel D. Nesset (#030475X)
150 South Fifth Street, Suite 1200
Minneapolis, MN 55402
Telephone: 612-260-9000
jnesset@cozen.com

*Attorneys for Debtor Division 2 Trucking Company*

18